UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-20345-CR-WILLIAMS

UNITED STATES OF AMERICA,

Plaintiff,

vs.

QUINTIN GRAY,

Defendant.

_________________________________/

# MOTION TO DISMISS INDICTMENT

Defendant Quintin Gray, through counsel, moves this Court to dismiss the Indictment pursuant to the First Amendment to the United States Constitution. The defense also requests a hearing on this motion. In support, Mr. Gray states as follows.

## INTRODUCTION

The Indictment charges Mr. Gray with Count 1: threat against the President, in violation of 18 U.S.C. § 871(a), and Count 2: transmitting threats through interstate communications, in violation of 18 U.S.C. § 875(c).

Under the First Amendment, most speech is constitutionally protected; thus, threats cannot prohibited by law unless they are "true threats." *Watts v. United States*, 394 U.S. 705 (1969). But Mr. Gray's comments, on their face, and viewed in their actual political and social context, are not true threats as a matter of constitutional law. They are protected political hyperbole under *Watts*, and not serious expressions of intent to commit unlawful violence under *Watts, Virginia v.*

*Black*, 538 U.S. 343 (2003), *Counterman v. Colorado*, 600 U.S. 66 (2023), or Eleventh Circuit law.

## FACTS

Nathaniel Gray is a 28-year-old Air Force veteran. He maintained a Twitter account with a handle of @tokio_under34. The account had approximately 14 followers.

The indictment alleges that Mr. Gray made a threat toward the President. Specifically, that on April 29, 2026, Mr. Gray posted the following on his Twitter account: "Well I also intend to kill trump. What now patriot act should be over let the crime happen then solve it you wasting money" (DE 14).



The tweet was seemingly in reference to the Federal Bureau of Investigation's criminal investigation of former FBI Director James Comey for making an alleged threat against the President. (see *United States v. Comey*, No. 4:26-cr-00016-FL-RN (E.D.N.C. filed Apr. 28, 2026). Over one month after the post, on June 18, 2026, after identifying that the @tokio_under34 Twitter account belonged to Mr. Gray, Secret Service agents and Miami Police Department officers approached Mr. Gray outside of his residence. (DE 3). Mr. Gray spoke with agents and officers admitted to being user @tokio_under34. (*Id* at 2.) Gray told officers that his post was meant to be sarcastic and was protected speech under the First Amendment. (*Id* at 3.) Shortly after, Mr. Gray ended his conversation with law enforcement and entered his residence. (*Id.*) Gray eventually exited his residence and had a second interaction with law enforcement telling law enforcement that he was trying to "kill POTUS via a heart attack by everyone collectively hating him or POTUS seeing his tweets." (*Id.*) Law enforcement searched Mr. Gray's residence after his arrest and found no weapons or plans to carry out an attack on the President.

## LAW

The charges against Mr. Gray must be dismissed because the Indictment violates Mr. Gray's constitutionally protected right to free speech under the First Amendment.

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE CHARGED COMMENTS ARE PROTECTED POLITICAL SPEECH UNDER**

**THE FIRST AMENDMENT, NOT A TRUE THREAT.**

A district court may dismiss an indictment before trial if the issue can be decided entirely as a matter of law without a trial on the merits. Fed. R. Crim. P. 12(b)(1). Whether speech is a "true threat" or protected expression is, in the first instance, a question of constitutional law for the Court. In *Watts*, the Supreme Court construed the threat statute "with the commands of the First Amendment clearly in mind" and held, as a matter of law, that the defendant's statement—specifically, "If they ever make me carry a rifle, the first man I want to get in my sights is L.B.J."—was constitutionally protected "political hyperbole." 394 U.S. at 707–08 ("We agree with petitioner that his only offense here was a kind of very crude offensive method of stating a political opposition to the President.") (citations omitted).

Courts must approach speech-based liability "with extreme care." *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982). That is so, because "expression on public issues has always rested on the highest rung of the hierarchy of First Amendment values." *Id.* at 913. This obligation of independent judicial judgment is heightened where, as here, the speech lies at the core of the First Amendment. *See, e.g, Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 508 (1984). Where the charged words themselves, as quoted in the Indictment, cannot as a matter of law constitute a true threat, dismissal is required now, not after trial. *See Watts*, 394 U.S. at 708; *see also United States v. Bagdasarian*, 652 F.3d 1113 (9th Cir. 2011) (where the Ninth Circuit reversed a threat conviction as a

question of law where one of the defendant's statement, that the President "will have a 50 cal in the head soon," was "predictive in nature," and the other, "shoot the n**," was an imperative directed at unidentified others).

At its inception, this country made a "profound national commitment" to uninhibited debate on public issues, including "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts*, 394 U.S. at 708. The First Amendment shields speech even where it is crude, angry, or offensive. *Id.* at 707–08. And the government may not restrict speech simply "because of its message, its ideas, its subject matter, or its content." *See Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (internal quotations omitted).

Because of our "profound national commitment" to uninhibited debate, most speech is constitutionally protected under the First Amendment. Most, but not all, since the First Amendment does not protect particularly dangerous speech. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942); *Brandenburg v. Ohio*, 444 U.S. 447 (1969). Nevertheless, a statute which criminalizes a form of pure speech "must be interpreted with the commands of the First Amendment clearly in mind." *Watts*, 394 U.S. at 707. Thus, criminal prosecution of speech is permitted only within a narrow set of historically unprotected categories. *Black*, 538 U.S. at 359.

**A. "True threats" are unequivocal, unconditional, and specific expressions of intent to inflict injury. Political hyperbole are not true threats.**

A "true threat" falls in the category of the types of speech that are so dangerous

that they are not protected by the First Amendment. *See Black*, 538 U.S. at 343. To the government, Mr. Gray's tweet constituted a "true threat" under 18 U.S.C. §§ 871(a) and 875(c). These statutes state, in pertinent part:

> **18 U.S.C. § 871(a):** Whoever knowingly and willfully deposits for conveyance in the mail . . . any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States, . . . or knowingly and willfully otherwise makes any such threat against the President, . . . shall be fined under this title or imprisoned not more than five years, or both.
>
> **18 U.S.C. § 875(c):** Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

Although the statutes do not specifically define what constitutes a "true threat," Supreme Court precedent does. "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 349 (citing *Watts*, 394 U.S. 708). As the Supreme Court has also explained, "[t]he 'true' in that term distinguishes" serious expressions of intent to harm "from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023).

The determination of whether a statement is a "true threat" depends on twofold inquiry, including 1) whether a reasonable person would perceive the statement as threatening, and 2) whether the speaker was subjectively aware of its

threatening nature. *Id.* at 72–3. Mere negligence—that a reasonable person should have recognized the threatening character—is constitutionally insufficient. *Id.* at 80.

Consistent with this twofold inquiry, the Eleventh Circuit Pattern Jury Instruction states that a jury can find a defendant guilty of violating § 871 only if the government proves "(1) the Defendant said the words alleged to be the threat against the President; (2) the Defendant understood and meant the words as a true threat; and (3) the Defendant knowingly and willfully said the words." Pattern Crim. Jury Instr. 11th Cir. O29 (2026). The Instructions define a "true threat" as "a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would lead a reasonable person to believe that the Defendant intended to kill or inflict bodily harm upon the President." *Id.*

Likewise, a jury can find a defendant guilty of violating § 875(c) only if the government proves: "(1) the Defendant knowingly sent a message in interstate commerce containing a true threat to injure the person of another; and (2) the Defendant sent the message with the intent to communicate a true threat or with knowledge that it would be viewed as a true threat." Pattern Crim. Jury Instr. 11th Cir. O30.3 (2026). Again, the Instructions define a "true threat" as "a serious threat – not idle talk, a careless remark, or something said jokingly – that is made under circumstances that would place a reasonable person in fear of being injured." *Id.*

The government contends that Mr. Gray's comment was a "true threat" – that

is, a serious expression conveying that he meant to commit violence against the President. The government's constitutional overreach is apparent. *United States v. Kelner* examined the constitutional limits to a § 875(c) prosecution, and explained that to be a true threat, a statement must be an "unequivocal, unconditional and specific expression of intention immediately to inflict injury." *See* 534 F.2d 1020, 1027 (2nd Cir. 1976). Relying on *Watts*, that Court stated:

> The purpose and effect of the *Watts* constitutionally-limited definition of the term "threat" is to insure that only *unequivocal, unconditional and specific expressions of intention immediately to inflict injury* may be punished—only such threats, in short, as are of the same nature as those threats which are . . . properly punished every day under statutes prohibiting extortion, blackmail and assault without consideration of First Amendment issues.

*Id*. at 1027 (emphasis added).

The tweet made by Mr. Gray was not specific. It was "idle talk" and a "careless remark." It cannot be a true threat because it failed to convey "a gravity of purpose and likelihood of execution." *United States v. Crews*, 781 F.2d 826, 832 (10th Cir. 1986) (A true threat "convey[s] a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected vehement, caustic unpleasantly sharp attacks on government and public officials"). It was not an expression to immediately inflict harm. This is confirmed when Mr. Gray told law enforcement that by sending the tweet that he was trying to "kill POTUS via a heart attack by everyone collectively hating him or POTUS seeing his tweets."

**B. *Watts* established that language in the political context is often abusive and inexact, and protected speech.**

The Supreme Court's decision in *Watts* establishes the protection of speech made in the political arena. At a public rally in 1966 in Washington D.C., Robert Watts told a smaller breakout group the following:

> They always holler at us to get an education. And now I have already received my draft classification as 1–A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. They are not going to make me kill my black brothers.

*Watts*, 394 U.S. at 707. In reversing the Defendant's conviction, the Supreme Court maintained that Watts's political hyperbole did not constitute a true threat against the President. *Id.* at 708. "The language of the political arena, like the language used in labor disputes, is often vituperative, abusive, and inexact." *Id.*

Thus, *Watts* identified context as a critical factor in the true threat analysis. *See Watts*, 394 U.S. at 708; *Black*, 538 U.S. at 365–67. Here, Mr. Gray's tweet, while abusive, when explained later in context as designed to cause the President a heart attack is clearly political hyperbole and political speech. Political speech about public officials occupies the highest tier of First Amendment protection. *See, e.g., Citizens United v. FEC*, 558 U.S. 310, 340 (2010).

Mr. Gray's comments were posted on his public Twitter platform, which are both frequently used by Mr. Gray and others to engage in commentary on national, political, and social issues. Such comments in political discussions, even ones invoking death, are not automatically true threats. *Watts*, 394 U.S. at 707–08; *see also Counterman*, 600 U.S. at 75–76 (subjective mens rea requirement protects

"breathing space" for political and social commentary). Like the defendant in *Watts*, Mr. Gray's statement was made in the twenty-first century equivalent of the public square with a public audience—and was clearly made in jest to prove a point. A statement, like the one made by Mr. Gray—that is, statements "which are made in jest, [or] communicated to a large audience, or political in nature, or conditioned on an event that would never happen," are statements more likely to be found to be protected speech, rather than a true threat. *United States v. McDonald*, 444 Fed. App'x 710 (4th Cir. 2011).

In sum, the content and context of Mr. Gray's statement and his lack of any preparatory moves of any kind, belie any argument that his public comments were meant "to communicate a serious expression of an intent to commit an act of unlawful violence." *See Black*, 538 U.S. at 359–60. Indeed, the foregoing factors compel the conclusion that these comments, as a matter of law, are not a "true threat." For these reasons, the Indictment must be dismissed.

The defense requests a hearing on this motion.

## **CONCLUSION**

For the foregoing reasons, Mr. Gray requests that the Court dismiss the Indictment under the First Amendment.

Respectfully Submitted,

HECTOR A. DOPICO
FEDERAL PUBLIC DEFENDER

By: *__/s/Jean-Pierre Gilbert__*
Jean-Pierre Gilbert
Assistant Federal Public Defender
Florida Special A No. A5502879
150 W. Flagler Street, Suite 1700
Miami, Florida 33130
Tel: 305-530-7000
Email: Jean-Pierre_Gilbert@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on **October 15, 2026**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/*Jean-Pierre Gilbert*